Filed 11/6/15  P. v. Randazzle CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>          v.<br><br>CODY RAYMON RANDAZZLE,<br><br>    Defendant and Appellant. | F068507<br><br>(Super. Ct. No. BF145781A)<br><br>**OPINION** |

-ooOoo-

### THE COURT[*]

APPEAL from a judgment of the Superior Court of Kern County.  John S. Somers, Judge.

Elisa A Brandes, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Michael P. Farrell, Assistant Attorney General, Louis M. Vasquez, Amanda D. Cary and Lewis A. Martinez, Deputy Attorneys General for Plaintiff and Respondent.

-ooOoo-

---

[*]       Before Gomes, Acting P. J., Detjen, J. and Peña, J.

## INTRODUCTION

Appellant Cody Raymon Randazzle was found guilty of gross vehicular manslaughter while intoxicated (Pen. Code, § 191.5, subd. (a), count 1)[1] and driving on a suspended license, a misdemeanor (Veh. Code, § 14601.1, subd. (a), count 2). The jury also found true an enhancement allegation for the personal infliction of great bodily injury (§ 12022.7), and the court found true allegations for a prior strike conviction (§§ 667, subds. (c)-(j), 1170.12, subds. (a)-(e)), a prior conviction for a serious felony (§ 667, subd. (a)), and that appellant served two prior prison terms (§ 667.5, subd. (b)).

The court dismissed one of the prior prison term enhancements and sentenced appellant to an aggregate term of 29 years in prison.

Appellant argues the trial court abused its discretion by ordering the jury to continue deliberations after the jury informed the court it could not reach an agreement on the greater crime charged and needed further guidance to proceed. We disagree and affirm the judgment.

## FACTUAL AND PROCEDURAL SUMMARY

### Prosecution's Case

On October 5, 2012, between 9:00 p.m. and 10:00 p.m., appellant, Chris Brown, Lawrence Johnson, and Amber Henry, were at Brown's mother's home. The group played dominoes and began drinking brandy and beer. After a couple of hours, the group decided to drive to appellant's home. Appellant had consumed between five and six shots of brandy and some beer.

Appellant drove Henry's vehicle, because Henry was too intoxicated to drive. Johnson sat in the front passenger's seat, Brown was in the backseat on the passenger's

---

[1] All undesignated statutory references are to the Penal Code unless otherwise stated.

2.

side, and Henry sat in the middle backseat, a child's car seat occupied the backseat on the driver's side.

Brown was awake, but sat with his eyes closed. He estimated the vehicle was traveling between 40 and 50 miles per hour when he felt it make a quick swerving motion, similar to a roller coaster. When he opened his eyes, he observed Johnson flail toward the steering wheel. A few seconds later, Brown felt the vehicle make impact, which rendered him temporarily unconscious. Emergency responders had to cut the roof off the vehicle to remove its occupants. Brown was taken to the hospital with a broken arm.

Johnson was awake during the incident. He estimated the vehicle was traveling between 60 and 70 miles per hour when the car made a sudden turn. Johnson, who was not wearing a seatbelt, started flying toward the driver's side of the vehicle. He woke up in the hospital a couple of days later with a fractured neck and brain swelling.

As Brown was giving a statement to police at the scene of the accident, Henry stopped breathing. She died as a result of her injuries.

Appellant was taken to Kern Medical Center. He had red, bloodshot, watery eyes, and the odor of alcohol on his breath. A blood screen indicated he had a blood-alcohol content of .18 percent. His blood also tested positive for cocaine, as well as THC, the compound found in marijuana.

Bakersfield Police Detective Kevin Fidler spoke to Brown on October 6, 2012, at 6:45 a.m. Just prior to the accident, Brown observed Johnson grab the wheel and try to turn it counterclockwise to correct the vehicle, which was moving to the right.

At trial, Bakersfield Police Officer Christopher Bagby testified as an accident reconstructionist. He determined that the accident was caused by an impaired driver who made an unsafe turning movement while the vehicle was traveling at a very high speed. Bagby found no evidence of an attempt to correct the movement of the vehicle. He

explained that if the vehicle had made impact at a lower rate of speed, there would likely have been no fatalities.

### Defense's Case

At trial, appellant testified on his own behalf. Appellant admitted he was drinking brandy and beer prior to driving Henry's vehicle. He indicated that he drove cautiously because he felt intoxicated, and did not want to be detained for driving under the influence. After an argument ensued between him and Johnson, appellant decided to pull over and wait by the side of the road. As appellant turned the steering wheel to the right to pull the vehicle over, Johnson unexpectedly grabbed the wheel and jerked it. Appellant panicked, stepped on the gas, and lost control of the vehicle. He woke up four days later in the hospital with critical injuries.

### Jury Instructions

On October 23, 2013, at 9:00 a.m., the jury began deliberations. One juror was dismissed after the court determined he had engaged in misconduct. After the court reconstituted the jury with an alternate juror, deliberations began again after 3:00 p.m. The court advised counsel the jury would be permitted to deliberate until 4:30 p.m., at which time they would be excused for the day and deliberations would resume at 9:00 a.m. the following day.

Approximately one hour later, at 4:07 p.m., the jury sent a note to the court asking for further guidance because they were unable to reach an agreement on the greater crime charged. Around 4:40 p.m., Judge Somers addressed the jury. He read the note back to the jury and then told them they would be excused for the day, and that deliberations would resume at 9:00 a.m. the following morning. Judge Somers stated he needed to know what issues the jury needed guidance on to assist them. He explained that the court could read back testimony, provide instruction on a point of law, or clarify the law, but advised that there were limits to what assistance could be provided. The jury was

cautioned not to discuss the case or to express or form opinions on the matter and the court dismissed the jury for the day.

The following day, the jury resumed deliberations at 9:00 a.m. and reached a verdict at 11:37 a.m. The jury found appellant guilty of all counts, and found true the enhancement allegation against him for inflicting great bodily injury.

## DISCUSSION

Appellant contends the trial court abused its discretion by ordering the jury to continue deliberations. We disagree.

Section 1140 provides that "the jury cannot be discharged after the cause is submitted to them until they have agreed upon their verdict and rendered it in open court, unless by consent of both parties, . . . or unless, at the expiration of such time as the court may deem proper, it satisfactorily appears that there is no reasonable probability that the jury can agree." Whether there is a reasonable probability that the jury can agree rests within the discretion of the trial court. (*People v. Halvorsen* (2007) 42 Cal.4th 379, 426.) We will not interfere with the trial court's discretion absent abuse thereof. (*In re Chapman* (1976) 64 Cal.App.3d 806, 815.)

In *People v. Medina* (1980) 107 Cal.App.3d 364, 370 (*Medina*), this court found the trial court abused its discretion where it discharged the jury after prematurely concluding the jury was deadlocked. In *Medina*, the jury notified the court that it was split six to six, and needed further instructions because there were unanswered questions. (*Id*. at p. 369.) Ten jurors indicated further deliberations would be fruitless. (*Ibid.*) The trial court declared a mistrial and discharged the jury without asking what instructions or further information it required. (*Id*. at pp. 369-370.) This court held that the trial court was in no position to conclude the jury was unable to reach a verdict, reasoning that a rereading of the evidence or the instructions may have facilitated a decision. (*Id.* at p. 370.)

5.

Unlike *Medina*, there is no evidence the trial court here concluded the jury was deadlocked, and prematurely discharged the jury as a result. We also find no evidence that the trial court encouraged further deliberations. Rather, the trial court simply dismissed the jury for the day.

After one hour of deliberations, the jury sent the court a note that stated the following: "[w]e are unable to reach an agreement on the greater crime charged. We need further guidance to proceed." Because it was already after 4:30 p.m., the time the jury would ordinarily be dismissed for the day, the court excused the jury and advised them it would address the jury's request for assistance the following morning.

Unlike *Medina*, where the trial court discharged the jury without asking what information or instructions it might need to help facilitate deliberations, here, Judge Somers informed counsel that "[i]t is too short a period of time to draw the conclusion that the jury is hopelessly deadlocked at this point in time, and they are again asking me for guidance, and so I'm going to do what I can within the bounds of the law to provide it." In addressing the jury, Judge Somers explained the court could provide further instruction or clarification on the law or read back testimony, and that the jury need only let the court know what it needed. The trial court acted well within its discretion in dismissing the jury for the day, and exercised sound judgment by offering the jury any legally permissible assistance it required. Thus, we find no abuse of discretion.

Because there is no evidence the jury was deadlocked, or that the court ordered the jury to continue deliberations, we need not reach appellant's argument that the jury was coerced, or that the trial court was required to give a cautionary instruction reminding the jury not to surrender conscientiously held beliefs to secure a verdict.

We also note the strong evidence against appellant in this case, and find reversal would not be warranted even if we did find error. There is no reasonable probability appellant would have received a more favorable verdict.

**DISPOSITION**

The judgment is affirmed.